*Exhibit "A"*
*Carveout Guaranty*

## GUARANTY

**THIS GUARANTY** ("**Guaranty**") is dated as of March 10, 2015 and is made by Franklin C. Gatlin, III, an individual resident of Florida ("**Guarantor**") for the benefit of ORIX Public Finance, LLC, a Delaware limited liability company, its successors and assigns ("**Lender**").

## RECITALS

A.      Lender has agreed to loan up to the principal amount of up to $13,000,000 (the "**Loan**") to Shingle Creek, LLC, a Delaware limited liability company ("**Borrower**"), pursuant to the terms and conditions of a certain Loan and Security Agreement of even date herewith (as amended from time to time, the "**Loan Agreement**") by and between Borrower and Lender. All capitalized terms not otherwise defined in this Guaranty shall have the meanings given them in the Loan Agreement.

B.      Lender has required, as a condition precedent to extension and disbursement of the Loan to Borrower and in consideration therefor, the execution and delivery of this Guaranty by Guarantor.

C.      Guarantor is an affiliate and has either a direct or indirect interest in Borrower, and having a financial interest in the Property, has agreed to execute and deliver this Guaranty to Lender.

**NOW THEREFORE**, in consideration of the Recitals set forth above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Guarantor hereby agrees as follows:

1.      **Liabilities.** Notwithstanding any exculpation or other provisions in any Loan Document to the contrary, Guarantor, as a primary party and not merely as a surety, unconditionally, absolutely and irrevocably agrees to be personally liable for the full, prompt and complete payment and satisfaction of each and all of the following (collectively, "**Guarantor's Liabilities**"):

(a)      Reserved.

(b)      All of the Indebtedness and other Obligations (including Losses and Expenses, as hereinafter defined) in the event of:

(i)      any fraud or any material or willful misrepresentation by or on behalf of any Borrower Party (including by their respective principals, officers, directors, general partners, employees, members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person in connection with the Loan, including the Initial Advance, any Advance, obtaining any consent or determination from Lender or the submission of financial information;

(ii)      any Transfer or any voluntary imposition by any Borrower Party (including by their respective principals, officers, directors, general partners, employees,

members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person of a Lien upon the Property unless expressly permitted under the Loan Documents or failure to obtain Lender's prior written consent to any subordinate financing or other voluntary lien encumbering the Property unless expressly permitted under the Loan Documents;

(iii)    any breach of Borrower's covenant to maintain its existence as a Single Purpose Entity;

(iv)    any Borrower Party (including by their respective principals, officers, directors, general partners, employees, members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person contesting or in any way interfering with, directly or indirectly, any foreclosure action, UCC sale or other remedy exercised by Lender upon the occurrence of any Event of Default whether by making any motion, bringing any counterclaim, claiming any defense, seeking any injunction or other restraint, commencing any action, or otherwise;

(v)    any Borrower Party (including by their respective principals, officers, general partners, employees, members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person, in connection with any enforcement action or exercise or assertion of any right or remedy by or on behalf of Lender or in connection with the Loan Documents, (A) seeks a defense, judicial intervention or injunctive or other equitable relief of any kind, (B) asserts in a pleading filed in connection with the judicial proceeding any defense against Lender or any right in connection with any security for the Loan, or (C) delays, opposes, impedes, obstructs, hinders, enjoins or otherwise interferes with or frustrates the due exercise by Lender of any such enforcement action, right or remedy, in each case which is frivolous, brought in bad faith, without merit (in the case of the defense) or unwarranted (in the case of the request of judicial intervention or injunctive or other equitable relief);

(vi)    any failure to cause all payments under the TIF Note to be deposited with the Lender by or on behalf of the Borrower in accordance with the requirements of the Loan Agreement or any receipt by Borrower, any Guarantor or any Affiliate of Borrower of any payments of TIF Note not expressly permitted under the Loan Documents;

(vii)    the occurrence of an Event of Default described in Section 7.1(h), (i), (j), or (k) of the Loan Agreement;

(viii)    any fraudulent or criminal acts of any Borrower Party (including by their respective principals, officers, directors, general partners, employees, members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person resulting in seizure, forfeiture, arson, or other loss of the Property;

(ix)    any misappropriation of condemnation proceeds, Advances, any payments under the TIF Note or of any other monies pledged as security for the Loan;

(x)    after the expiration of any applicable cure periods, any failure to comply with or perform the terms and provisions of, or the occurrence of an event of default or default under, the Environmental Indemnity Agreement by or on behalf of any Borrower Party (including by their respective principals, officers, directors, general partners, employees, members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person;

(xi)    after the expiration of any applicable cure periods, any failure to comply with or perform the terms and provisions of, or the occurrence of a default or an event of default under any City Debt Documents, Assignment of Development Agreement, Assignment of the EDA Purchase Agreement or the EDA Purchase Agreement by or on behalf of any party thereto;

(xii)    any failure to comply with the terms and provisions of Section 5.1.5(d) of the Loan Agreement as they relate to the Kohl's Building by or on behalf of the Borrower; or

(xiii)    any breach of any Applicable Law (including the Racketeer Influenced and Corrupt Organizations Act) mandating the forfeiture by Borrower of the Property, or any portion thereof, because of the conduct or purported conduct of criminal activity by any Borrower Party (including by their respective principals, officers, general partners, employees, members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person in connection therewith;

(xiv)    any failure to comply with the terms and provisions of Section 5.8(b) through (d) of the Loan Agreement by or on behalf of the Borrower;

(xv)    any failure to comply with the terms and provisions of Section 7.2.6 by or on behalf of the Borrower; or

(xvi)    any failure to comply with the terms and provisions of  Section 9.29 of the Loan Agreement by or on behalf of any Borrower Party (including by their respective principals, officers, directors, general partners, employees, members, representatives, agents, Affiliates and attorneys-in-fact) or any of their respective Affiliates or any agent or employee of any such person.

(c)    Without limiting the generality of subparagraphs (a) or (b) above, all Losses and Expenses arising from any of the following:

(i)    any gross negligence or willful misconduct of any Borrower Party or any of their respective Affiliates, agents, employees, attorneys-in-fact or representatives (and in the case of any agent or representative, such agent or representative had actual, apparent, ostensible or implied authority);

(ii)    any removal or disposal of any portion of the Property by any Borrower Party or any of their respective Affiliates, agents or representatives after an Event of Default;

(iii)    any insurance policy required by the Loan Documents has not been obtained or is no longer in full force and effect;

(iv)    any failure to pay when due the Deposits required by the Loan Agreement;

(v)    any use of Revenues generated after the occurrence of any Default for purposes other than payment of usual and customary operating expenses of the Property or the Indebtedness;

(vi)    any use of Loss Recoveries for purposes other than as designated pursuant to the Loan Agreement;

(vii)    any physical loss or damage affecting the Property resulting from the intentional acts of any Borrower Party or any of their respective agents or Affiliates, and any physical or economic waste with respect to the Property or any part thereof;

(viii)    any failure to allow inspections of the Property or access to Borrower's books and records as required by any of the Loan Documents;

(ix)    any failure to deliver to Lender any security deposits, advance deposits or any other deposits collected with respect to the Property upon a foreclosure of the Property or action in lieu thereof, except to the extent any such security deposits were applied in accordance with the terms and conditions of any of the Leases prior to the occurrence of the Event of Default that gave rise to such foreclosure or action in lieu thereof; and

(x)    the creation of any security interest or Lien pursuant to the Loan Agreement or any of the other Loan Documents, or any other transfer of property described in the Loan Documents, being deemed fraudulent conveyances or preferences or otherwise being deemed void pursuant to any principles limiting the rights of creditors, whether such claims, demands, or assertions are made under the Bankruptcy Code or under any applicable state fraudulent conveyance statutes or similar laws.

(d)    Upon a failure of Borrower to meet any of the covenants in Section 2.3.1(e) of the Loan Agreement, at Lender's sole option (a) the payment to Lender of an amount required to reduce the outstanding principal balance of the Loan to an amount sufficient to return the failed covenant(s) to compliance and in accordance with the Loan Agreement as determined by Lender in its sole discretion, or (b) the delivery to Lender of additional collateral in an amount or type as deemed necessary by Lender, in its sole discretion, which collateral would be released upon Lender's determination that Borrower is again in compliance with the covenants in Section 2.3.1(e) of the Loan Agreement as long as no other Event of Default has occurred.

The term **"Losses and Expenses"** means (a) all losses, damages, direct or consequential, and liabilities which Lender or any subsequent holder of the Note may suffer, pay or incur, including protective advances and the cost of appraisals, site investigation, engineering reports and surveys, audits or other investigations and (b) all attorneys' fees, court costs and other legal expenses (for outside counsel only) and all other third party out of pocket costs and expenses of any kind which Lender or any subsequent holder of the Note may pay or incur in attempting to

collect, compromise or enforce, in any respect, any of Guarantor's Liabilities, whether or not suit is ever filed, and whether or not in connection with any insolvency, bankruptcy, reorganization, arrangement or other similar proceeding involving any Borrower Party or any other guarantor. If Lender pays any such cost or expense, **"Losses and Expenses"** shall also include interest at the Default Rate on any such payment from the date such cost or expenses is incurred until repayment to Lender in full.

2.      **Absolute Guaranty**.

(a)      This Guaranty is an absolute, unconditional, irrevocable, independent and present guaranty of payment and performance and not of collection, and is a primary obligation of Guarantor and shall not be subject to any counterclaim, set-off, abatement, deferment or defense based on any claim that Guarantor may have against Lender, any Borrower Party, any other guarantor, or any other Person. Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other Person that may be obligated for all or any part of any Guarantor's Liabilities nor to pursue any other rights or remedies before seeking satisfaction of any Guarantor's Liabilities. Guarantor shall pay all of such Guarantor's Liabilities to Lender in full within ten (10) days after written demand, which shall accrue interest at the Default Rate from the date due until the date paid. One or more successive actions may be brought against Guarantor, as often as Lender deems advisable, until all of Guarantor's Liabilities are paid and performed in full.

(b)      Guarantor agrees that no portion of any sums applied (other than sums received from Guarantor in full or partial satisfaction of its obligations hereunder), from time to time, in reduction of the Indebtedness shall be deemed to have been applied in reduction of Guarantor's Liabilities until such time as the Indebtedness has been paid in full, or Guarantor shall have made the full payment required hereunder, it being the intention hereof that the Guarantor's Liabilities shall be the last portion of the Indebtedness to be deemed satisfied.

(c)      Suit may be brought or demand may be made against Borrower, Guarantor or against any other Person who has signed any other guaranty in favor of Lender covering all or any part of the Guarantor's Liabilities, or against any one or more of them, separately or together, without impairing the rights of Lender against Guarantor or any such Person. Any time that Lender is entitled to exercise Lender's rights or remedies hereunder, Lender may in its discretion elect to demand payment or performance or both payment and performance. If Lender elects to demand performance, it shall at all times thereafter have the right to demand payment until all of the Guarantor's Liabilities have been paid and performed in full. If Lender elects to demand payment, it shall at all times thereafter have the right to demand performance until all of the Guarantor's Liabilities have been paid and performed in full.

3.      **Representations and Warranties**. Guarantor hereby represents and warrants to Lender as follows:

(a)      **Review of this Guaranty and the Loan Documents**. Guarantor has reviewed with the benefit of its legal counsel the terms of this Guaranty and each other Loan Document.

(b)     **Reserved**.

(c)     **Enforceability**. Each obligation under this Guaranty is legal, valid, binding and enforceable against Guarantor in accordance with its terms.

(d)     **Financial Statements**. The financial statements furnished on behalf of Guarantor to Lender in connection with this Guaranty or the Loan Documents: (i) are true, correct and complete and not misleading as to Guarantor's financial condition; (ii) have been prepared in accordance with Guarantor's established accounting practices, consistently applied; and (iii) present fairly the financial condition or operating results, as applicable, of Guarantor as of the respective dates thereof. No material adverse change has occurred in the financial condition of Guarantor since the effective dates of such financial statements.

(e)     **No Existing Defaults and No Litigation**. There is currently no Event of Default and Guarantor has no knowledge of any event or circumstance which with the giving of notice or the passage of time, or both, would constitute an Event of Default. Guarantor is not in default under any agreement, and, to Guarantor's knowledge, after due inquiry, no event has occurred that with the passage of time and/or the giving of notice would constitute a default under any agreement, the effect of which could have a Material Adverse Effect on the performance of Guarantor's obligations under this Guaranty. There are no litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending or, to the best of Guarantor's knowledge, threatened against Guarantor before any court or other governmental authority of any kind which could have a Material Adverse Effect on the performance of Guarantor's obligations under this Guaranty. To Guarantor's knowledge, after due inquiry, neither the execution and delivery of this Guaranty nor compliance with the terms and provisions of this Guaranty will violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of Guarantor, or any other indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind to which Guarantor is a party or to which Guarantor or the property of Guarantor may be subject.

(f)     **No Misstatements or Omissions**. This Guaranty does not contain any untrue statement of fact nor omit to state any fact material to this Guaranty. Guarantor does not have any knowledge of any material fact, inaccuracy or untruth concerning any Borrower Party or any Borrower Party's financial condition which has not been disclosed to Lender and might adversely affect Lender's determination to enter into or arrange disbursement of the Loan.

(g)     **Governmental Approval**. No registration with or consent or approval of, or other action by, any federal, state, municipal or other governmental agency, authority or regulatory body, domestic or foreign, relating to Guarantor is or will be required in connection with the execution, delivery and performance of this Guaranty.

(h)     **Loans to Borrower**. Borrower has no unpaid loans or advances from, or other obligations to, Guarantor.

(i)     **Consideration**. (i) Guarantor is the owner of a direct or indirect interest in Borrower, (ii) the value of the consideration and benefit received and to be received by Guarantor, directly or indirectly, as a result of Lender making the Loan to Borrower, and Guarantor executing and delivering this Guaranty, is reasonably worth at least as much as the liability and obligation of Guarantor hereunder, and (iii) the Loan has benefited and may reasonably be expected to benefit Guarantor, directly or indirectly.

(j)     **No Bankruptcy or Similar Proceedings**. No bankruptcy or insolvency proceedings are pending or contemplated by or against Guarantor, and, after giving effect to this Guaranty, Guarantor is solvent, is not engaged or about to engage in business or a transaction for which the property of any Guarantor is an unreasonably small capital, and has not incurred and will not incur debts that will be beyond Guarantor's ability to pay as such debts mature.

(k)     **No Reliance**. Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or the Guarantor's Liabilities; but Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

(l)     **No Inducement**. Neither Lender, Borrower nor any Affiliate of either Lender or Borrower has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty, and Guarantor hereby expressly waives any claim of fraudulent inducement to execute this Guaranty and further disclaims any reliance on statements or representations of Lender in waiving such a claim.

(m)     **Non-Application of ERISA or Similar State Laws**. As of the date hereof and throughout the term of the Loan, (i) Guarantor is not and will not be (A) an "employee benefit plan", as defined in Section 3(3) of the ERISA; or (B) a "plan" within the meaning of Section 4975(e) of the Internal Revenue Code; (ii) the assets of Guarantor do not and will not constitute "plan assets" within the meaning of the United States Department of Labor Regulations set forth in 29 C.F.R. §2510.3-101; (iii) Guarantor is not and will not be a "government plan" within the meaning of Section 3(32) of ERISA; (iv) transactions by or with Guarantor are not and will not be subject to state statutes applicable to Guarantor regulating investments of fiduciaries with respect to governmental plans; and (v) Guarantor shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of Lender's rights under this Guaranty, the Note or the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under ERISA or Section 4975 of the Internal Revenue Code. Guarantor further agrees to deliver to Lender such certifications or other evidence of compliance with the provisions of this Section as Lender may from time to time request.

(n)     **Prohibited Person**. To Guarantor's knowledge, after due inquiry, neither Guarantor, nor any Person for whom Guarantor is acting as agent or nominee in connection with this transaction, and none of any of the foregoing Persons' partners, members, shareholders or other equity owners and none of their respective employees, officers, directors, representatives or agents, is a Prohibited Person.

4.      **Indemnities**. Guarantor hereby indemnifies Lender and agrees to defend and hold Lender harmless from and against any loss, cost, damage or expense occurring by reason of a breach of the representations, warranties or covenants set forth in this Guaranty, and the loss, mitigation, subordination or other consequences adverse to Lender by reason of this Guaranty being challenged as a preference or suffering any other subjugation under any bankruptcy or other law, whether state or federal, affecting debtors, creditors and/or the relationship between such parties.

5.      **Covenants**. For as long as this Guaranty shall remain in effect,  Guarantor hereby covenants and agrees as follows:

(a)      **Financial Covenants; Periodic Financial Reports**. At all times during the term of the Loan, Guarantor shall maintain the minimum Net Worth and Liquidity as required under the Loan Agreement. Guarantor agrees that it shall timely provide all financial reports, statements or similar information required under the Loan Agreement with respect to Guarantor in the format and time required therein. Without limiting the foregoing and in addition to any financial reports required under the Loan Agreement, within thirty (30) days after the request of Lender (but, so long as no Default or Event of Default exists, no more often than quarterly), Guarantor shall deliver to Lender such other financial statements and information as Lender may reasonably request.

(b)      **Transfers, Sales, Etc**. Guarantor shall not, without the prior written consent of Lender: (i) sell, lease, transfer, convey or assign any of Guarantor's material assets, directly or indirectly, unless Guarantor shall receive adequate consideration for such assets and such transaction will not have a Material Adverse Effect on the financial condition of Guarantor; or (ii) sell, transfer, convey, pledge, assign, mortgage, encumber, hypothecate or otherwise dispose, whether directly or indirectly, of all or any portion of such Guarantor's right, title or interest (legal or equitable) in and to the Property or any interest in any Borrower Party.

(c)      **Rescinded or Returned Payments**. If at any time any part of any payment previously applied by Lender to any of Guarantor's Liabilities is rescinded or returned by Lender for any reason, including the insolvency, bankruptcy or reorganization of any Borrower Party or any other Person, Guarantor's Liabilities shall be deemed to have continued in existence to the extent that such payment is rescinded or returned, and this Guaranty shall be reinstated as to Guarantor's Liabilities as though such payment by any Guarantor and prior application by Lender had not been made.

(d)      **Certain Permitted Actions of Lender**. Lender may from time to time, in Lender's sole discretion and without notice to Guarantor, take any of the following actions without in any way affecting the obligations of Guarantor: (i) obtain a security interest in any property to secure any of the Indebtedness or the Obligations or any obligation hereunder; (ii) obtain the primary or secondary obligation of any additional obligor or obligors with respect to any of the Indebtedness or the Obligations; (iii) extend, modify, subordinate, exchange or release any of the Indebtedness or the Obligations; (iv) modify, subordinate, exchange or release Lender's security interest in any part of any property securing any of the Indebtedness or the Obligations or any obligation hereunder, or extend, modify, subordinate, exchange or release any obligations of any obligor with respect to any such property; (v) alter the manner or place of

8

payment of the Indebtedness or the Obligations; (vi) enforce this Guaranty against Guarantor for payment of any of Guarantor's Liabilities, whether or not Lender shall have (A) proceeded against Borrower or any other guarantor or any other Person primarily or secondarily obligated with respect to any of Guarantor's Liabilities or any Indebtedness or (B) resorted to or exhausted any other remedy or any other security or collateral; and (vii) foreclose on, take possession of or sell any of the collateral or security for Guarantor's Liabilities or enforce any other rights under any other Loan Document.

(e)     **Lender's Option to Release**. Lender may from time to time in Lender's sole and absolute discretion (i) release any one or more Guarantor from any or all of Guarantor's obligations and liabilities hereunder and/or (ii) release any Borrower Party or any other obligor from any of the Indebtedness or the Obligations, all without notice to any Borrower Party or any other Person and without in any way releasing or affecting the liability of Guarantor hereunder not a part of any such release.

(f)     **Application of Payments**. Lender may apply any payment made on account of the Indebtedness or the Obligations toward such of the Indebtedness or the Obligations, and in such order, as Lender may from time to time elect in Lender's sole discretion, whether or not the Indebtedness or the Obligations are guaranteed hereby, otherwise secured or due at the time of application.

(g)     **Certain Events Not Affecting Obligations of Guarantor**. The obligations of Guarantor hereunder shall not be affected by any of the following: (i) any lack of validity or enforceability of any of the Loan Documents; (ii) the release or discharge of any Borrower Party or any other guarantor in any creditors' receivership, bankruptcy, reorganization, insolvency, or other proceeding; (iii) the rejection or disaffirmance in any such proceeding of any of Guarantor's Liabilities; (iv) the impairment or modification of any of Guarantor's Liabilities, or of any remedy for the enforcement thereof, or of the estate of any Borrower Party or any other guarantor in bankruptcy, resulting from any present or future federal or state bankruptcy law or any other law of any kind or from the decision or order of any court or other governmental authority; (v) any disability or defense of any Borrower Party or any other guarantor; (vi) the cessation of the liability of any Borrower Party or any other guarantor for any cause whatsoever other than payment and performance in full of all of the Indebtedness and the Obligations of Guarantor's Liabilities, respectively; (vii) any sale, assignment, transfer or other conveyance (including any conveyance in lieu of foreclosure or any collateral sale pursuant to the Uniform Commercial Code) of any of the security for any of Guarantor's Liabilities, regardless of the amount received by Lender in connection therewith; (viii) Lender's failure to file any UCC financing statements, or Lender's improper filing thereof, or Lender's failure to otherwise perfect, protect, secure, or insure any security interest or lien given as security for the Loan; or (ix) any disability or defense of any kind now existing of Guarantor with respect to any provision of this Guaranty.

(h)     **No Obligation of Lender Regarding Security Interest**. Lender shall have no obligation to obtain, perfect or retain a security interest in any property to secure any of Guarantor's Liabilities or this Guaranty (including any mortgage or security interest contemplated by the Loan Documents), or to protect or insure any such property.

(i)     **Filing of Certain Claims**. Guarantor shall promptly file in any bankruptcy or other proceeding in which the filing of claims is required by law all claims and proofs of such claims which such Guarantor may have against Borrower, and will collaterally assign to Lender or its nominee all rights of Guarantor thereunder. If Guarantor does not so file, Guarantor hereby irrevocably authorizes Lender or Lender's nominee to do so, either (in Lender's discretion) as attorney-in-fact for such Guarantor, or in the name of Lender or Lender's nominee. In all such cases, any party authorized to pay such claim shall pay to Lender or its nominee the full amount thereof.

(j)     **Obligations and Taxes**. Guarantor shall pay and discharge promptly when due all taxes, assessments and governmental charges or levies imposed upon Guarantor or upon Guarantor's income or profits or in respect of Guarantor's property before the payment shall become delinquent or in default; provided, however, that Guarantor shall not be required to pay and discharge or to cause to be paid and discharged any such tax, assessment or governmental charge or levy so long as the validity or amount thereof shall be contested in good faith by appropriate proceedings and Guarantor shall have set aside on Guarantor's books adequate reserves with respect thereto.

(k)     **Responsibility to Stay Informed**. Guarantor will keep itself fully apprised of the financial and business condition of each of the Borrower Parties, and Guarantor shall be responsible for obtaining for itself information regarding the Borrower Parties including, without limitation, any changes in the financial or business condition of the Borrower Parties, and Guarantor acknowledges and agrees that Lender shall have no duty at any time to notify Guarantor of any information which Lender may have or acquire concerning any Borrower Party or to investigate or inform Guarantor of the financial or business condition or affairs of any Borrower Party or any change therein.

6.     **Waivers**. Guarantor hereby expressly waives, to the extent permitted by Applicable Laws or equity:

(a)     **Notices**. Notice of the acceptance by Lender of this Guaranty, notice of the existence, creation or non-payment of any of Guarantor's Liabilities, presentment, demand, notice of dishonor, protest, notice of protest, and all other notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, except any specifically required by this Guaranty.

(b)     **Disclosures About Borrower Parties**. Any obligation Lender may have to disclose to Guarantor any facts Lender now or hereafter may know or have reasonably available to it regarding any Borrower Party or the financial condition of any Borrower Party, or regarding the Property for the Loan whether or not Lender has a reasonable opportunity to communicate such facts or has reason to believe that any such facts are unknown to Guarantor or materially increase the risk to Guarantor beyond the risk Guarantor intends to assume hereunder.

(c)     **Diligence in Collection**. All diligence in collection of any of Guarantor's Liabilities, any obligation hereunder, or any guaranty or other security for any of the foregoing.

(d)    **Benefit of Certain Laws**. The benefit of all appraisement, valuation, marshaling, forbearance, stay, extension, reinstatement, redemption, homestead, exemption and moratorium laws now or hereafter in effect.

(e)    **Certain Defenses**. Any defense based on the incapacity, lack of authority, death or disability of any other Person (including, without limitation, any other Guarantor) or the failure of Lender to file or enforce a claim against the estate of any other Person (including, without limitation, any other Guarantor) in any administrative, bankruptcy or other proceeding.

(f)    **Election of Remedies Defense**. Any defense based on an election of remedies by Lender, whether or not such election may affect in any way the recourse, subrogation or other rights of Guarantor against Borrower or any other person (including, without limitation, any other Guarantor) in connection with Guarantor's Liabilities.

(g)    **Defenses Relating to Collateral Sale**. Any defense based on the failure of Lender to: (i) provide notice to Guarantor of a sale or other disposition (including any collateral sale pursuant to the Uniform Commercial Code) of any of the security for any of Guarantor's Liabilities; or (ii) conduct such a sale or disposition in a commercially reasonable manner.

(h)    **Defenses Relating to Loan Administration**. Any defense based on the negligence of Lender in administering the Loan, or taking or failing to take any action in connection therewith or any claim based on allegations that Lender failed to act in a commercially reasonable manner or failed to exercise any obligation of good faith and fair dealing.

(i)    **Right to Enforce Lender's Remedies**. Any right to enforce any remedies or to participate in any security Lender now has, or later may have, against any Borrower Party or any other guarantor or other Person, or any requirement to exhaust any remedies, whether by subrogation or otherwise, or any requirement to mitigate damages, until all of the Indebtedness has been paid to Lender and all other Obligations have been performed.

(j)    **Any Right to Revoke**. Any right to revoke this Guaranty with respect to Guarantor's Liabilities.

(k)    **Borrower's Limitations**. Any defense based upon any limitation of liability or recourse against, or other exculpation from liability of, Borrower or any other Person in any other Loan Document or arising under any law or statute.

(l)    **Lack of Consideration**. Any claim or defense that this Guaranty was made without consideration or is not supported by adequate consideration.

(m)    **Statute of Limitation**. Any right or defense based upon a statute of limitations or similar claim in any action hereunder for the collection of the Note or for the payment or performance of any or all of Guarantor's Liabilities.

7.   **Miscellaneous**.

(a)   **Continuing Guaranty**. No notice of discontinuance or revocation shall affect any of the obligations of any Borrower Party or of any other obligor with respect to any of Guarantor's Liabilities. Lender shall not be obligated to accept at any time any deed in lieu of foreclosure, and all obligations of Guarantor hereunder shall survive foreclosure or any deed in lieu of foreclosure which Lender may accept, to the extent any of Guarantor's Liabilities remain unsatisfied.

(b)   **Obligations; Successors and Assigns**. All obligations under this Guaranty shall be binding upon Guarantor, and upon Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of Lender, each holder of the Note and the successors and assigns of each holder of the Note.

(c)   **Assignment by Lender**.  Lender may from time to time in accordance with the Loan Agreement, without notice to any Borrower Party, assign or transfer any interest in any of Guarantor's Liabilities by Loan Transfer, Participation, Securitization or otherwise, and notwithstanding such assignment or transfer, Guarantor's Liabilities shall remain Guarantor's Liabilities for purposes of this Guaranty. Guarantor agrees that Lender may exchange financial information about Guarantor with Lender's Affiliates, its participants, assignees and transferees, and prospective participants, assignees and transferees.

(d)   **No Exculpation**.  No exculpatory, "non-recourse", "limited recourse", or other language contained in any other Loan Document or in any other document shall in any way prevent or limit Lender from enforcing this Guaranty against Guarantor personally.

(e)   **Payments**.  All sums payable under this Guaranty shall be paid in immediately available funds, without offset, in lawful money of the United States of America, which shall at the time of payment be legal tender for the payment of public and private debts. Payments by check or draft shall not constitute payment in immediately available funds until the required amount is actually received by Lender in full.

(f)   **Time of Essence**.  Time is hereby declared to be of the essence of this Guaranty and of every part, term and provision hereof, and each and every obligation hereunder.

(g)   **Definitional Provisions; Captions; Gender**. With respect to any reference in this Guaranty to any defined term: (i) if such defined term refers to a Person, then it shall also mean all heirs, personal representatives, successors and assigns of such Person; and (ii) if such defined term refers to a document, instrument or agreement, then it shall also include any replacement, extension or other modification thereof. The captions and headings contained in this Guaranty are for convenience only and are not to be considered as defining or limiting in any way the scope or intent of the provisions hereof. References to any Section or Sections shall be deemed to refer to Sections of this Guaranty unless otherwise indicated. Use of the masculine, feminine or neuter gender and of singular and plural shall not be given the effect of any exclusion or limitation herein. The words "hereof", "herein" and "hereunder" and words of similar import when used in this Guaranty shall refer to this Guaranty. The word "include(s)"

when used in this Guaranty means "include(s), without limitation," and the word "including" means "including, but not limited to."

      (h)    **Notices.** All Notices given under or pursuant to this Guaranty shall be in writing and shall be (a) delivered in person, in which event the Notice shall be deemed received when delivery is actually made, (b) sent by e-mail, in which event the Notice shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement), provided that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient, and further provided that a copy of such Notice is also delivered pursuant to clause (a) or (c); or (c) sent by a nationally recognized overnight courier for next business day delivery, in which event the Notice shall be deemed received on the first Business Day after delivery to, and acceptance for delivery by, the courier. All such Notices intended for Lender shall be delivered, with a copy to its attorney, to their respective Addresses provided in the Loan Agreement and if sent by e-mail such Notices shall be sent to the e-mail address set forth in the Loan Agreement. Either party may change its Address or e-mail address by giving written notice to the other in accordance with the foregoing notice provision.

      Guarantor's Address for Notices is:

                                   Franklin C. Gatlin, III
                                   c/o Shingle Creek, LLC
                                   888 East Las Olas Boulevard
                                   Suite 600
                                   Ft. Lauderdale, FL 33310
                                   E-mail: Frank@gatlindc.com

      With a copy to:              Briggs and Morgan, P.A.
                                   2200 IDS Center
                                   80 South Eighth Street
                                   Minneapolis, MN 55402
                                   Attn: Thomas L. Bray
                                   E-mail: tbray@briggs.com

      (i)    **Entire Agreement**. This Guaranty constitutes the entire agreement of Guarantor for the benefit of Lender with respect to the subject matter hereof and supersedes any prior agreements with respect to the subject matter hereof.

      (j)    **No Modification Without Writing**. This Guaranty may not be terminated or modified in any way nor can any right of Lender or any obligation of Guarantor be waived or modified, except by a writing signed by Lender and Guarantor. Without limiting the foregoing, no course of performance or course of dealing between Lender and Guarantor or any other Person shall be deemed to modify in any way the provisions of this Guaranty.

(k)     **Independent Obligations**. The obligations of Guarantor hereunder are independent of the obligations of Borrower, and any other guarantor of any of the Indebtedness. In the event of any default hereunder, Lender may institute a separate action against Guarantor with or without joining or instituting a separate action against Borrower or against any other guarantor or obligor of any of the Indebtedness.

(l)     **Severability**. If any provision of this Guaranty or the application thereof to any Person or situation shall, to any extent, be held invalid or unenforceable, the remainder of this Guaranty, and the application of such provision to Persons or situations other than those to which it shall have been held invalid or unenforceable, shall not be affected thereby, but shall continue valid and enforceable to the fullest extent permitted by Applicable Law.

(m)     **Cumulative**. The obligations of Guarantor hereunder are in addition to any other obligations Guarantor may now or hereafter have to Lender, and shall not be affected in any way by the delivery to Lender by Guarantor or any other guarantor of any other guaranty, or any combination thereof. All rights and remedies of Lender and all obligations of Guarantor under this Guaranty are cumulative. In addition, Lender shall have all rights and remedies available to Lender in law or equity for the enforcement of this Guaranty.

(n)     **Effect of Lender's Delay or Action**. No delay by Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude any other exercise thereof or the exercise of any other right or remedy. No action of Lender permitted hereunder shall in any way impair or otherwise affect any right of Lender or obligation of Guarantor under this Guaranty. Lender shall not be liable in any way for any decrease in the value or marketability of any property securing any of Guarantor's Liabilities which may result from any action or omission of Lender in enforcing any part of this Guaranty.

(o)     **Subrogation**. Until all of Guarantor's Liabilities have been paid to Lender, and all periods under applicable bankruptcy law for the contest of any payment by any Guarantor as a preferential or fraudulent payment have expired, Guarantor, to the extent permitted by Applicable Laws or equity, knowingly and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which Guarantor may now or hereafter have by and from Borrower and Borrower's successors and assigns, for any payments made by Guarantor to Lender, including without limitation, any rights which might allow Borrower, Borrower's successors and assigns or creditors, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of or for the benefit of Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender. Guarantor further waives any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor to proceed against Borrower.

(p)     **Joint and Several**. Guarantor's Liabilities shall be the joint and several obligations and liabilities of Guarantor, Borrower and any other guarantor of all or part of the

Indebtedness or Obligations. Notwithstanding any provisions of this Guaranty to the contrary, it is intended that the joint and several nature of the liability of Guarantor's Liabilities and the liens and security interests, if any, granted as security for the Indebtedness or Obligations, not constitute a fraudulent conveyance under the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the applicable provisions of any fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time (a "**Fraudulent Conveyance**"). Consequently, if the liability of Guarantor for Guarantor's Liabilities, or any liens or security interests granted by Guarantor securing Guarantor's Liabilities would, but for the application of this sentence, constitute a Fraudulent Conveyance, the liability of Guarantor and the liens and security interests securing such liability shall be valid and enforceable only to the maximum extent that would not cause such liability or such lien or security interest to constitute a Fraudulent Conveyance, but liability of Guarantor hereunder shall be unaffected.

(q)     **Unconditional Obligations**. The obligations of Guarantor shall be unconditional, irrespective of (i) the institution of any proceeding under the Bankruptcy Code, or any similar proceeding, by or against any Borrower Party or Lender's election in any such proceeding of the application of Section 1111(b)(2) of the Bankruptcy Code; (ii) any borrowing or grant of a security interest by Borrower as debtor-in-possession, under Section 364 of the Bankruptcy Code; (iii) the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of Lender's claim(s) for repayment of any of Guarantor's Liabilities; or (iv) any other circumstance other than payment in full of Guarantor's Liabilities which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(r)     **Governing Law**. THIS GUARANTY AND THE OTHER LOAN DOCUMENTS SHALL BE DEEMED TO BE CONTRACTS ENTERED INTO PURSUANT TO THE LAWS OF THE STATE OF NEW YORK AND SHALL IN ALL RESPECTS BE GOVERNED, CONSTRUED, APPLIED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS), INCLUDING WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, AND TO THE FULLEST EXTENT PERMITTED BY LAW, GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY OR ANY OF THE OTHER LOAN DOCUMENTS, AND THIS GUARANTY AND THE NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO § 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW; PROVIDED, HOWEVER, THAT THE LAWS OF THE STATE WHERE THE LAND IS LOCATED SHALL APPLY TO THE CREATION, PERFECTION AND ENFORCEMENT OF ANY LIENS, SECURITY INTERESTS AND ENCUMBRANCES GRANTED OR CREATED BY THE MORTGAGE ON REAL PROPERTY LOCATED IN THE STATE WHERE THE LAND IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE VALIDITY AND THE ENFORCEABILITY OF ALL LOAN DOCUMENTS AND THE INDEBTEDNESS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING,

THE LAWS OF THE STATE OF NEW YORK SHALL APPLY TO ALL MATTERS RELATING TO THE CHARGING AND COLLECTION OF INTEREST AND FEES UNDER THE LOAN DOCUMENTS. THE FACT THAT PORTIONS OF THE LOAN DOCUMENTS MAY INCLUDE PROVISIONS DRAFTED TO CONFORM TO THE LAW OF THE STATE WHERE THE LAND IS LOCATED IS NOT INTENDED, NOR SHALL IT BE DEEMED, IN ANY WAY, TO DEROGATE THE PARTIES' CHOICE OF LAW AS SET FORTH HEREIN OR IN THE OTHER LOAN DOCUMENTS. EACH GUARANTOR ACKNOWLEDGES AND AGREES THAT THE CHOICE OF NEW YORK LAW WAS A MATERIAL INDUCEMENT TO LENDER TO ACCEPT THIS GUARANTY AND TO MAKE THE LOAN.

(s)   **CONSENT TO JURISDICTION**. GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN NEW YORK COUNTY, NEW YORK AND UNCONDITIONALLY AND IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS SHALL BE LITIGATED SOLELY IN ANY STATE OR FEDERAL COURT LOCATED WITHIN NEW YORK COUNTY, NEW YORK. GUARANTOR HEREBY EXPRESSLY UNCONDITIONALLY AND IRREVOCABLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND GUARANTOR UNCONDITIONALLY AND IRREVOCABLY AGREES THAT ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE OTHER LOAN DOCUMENTS SHALL BE BROUGHT, FILED AND LITIGATED BY GUARANTOR SOLELY IN ANY STATE OR FEDERAL COURT LOCATED WITHIN NEW YORK COUNTY, NEW YORK. GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON GUARANTOR BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO GUARANTOR, AT THE ADDRESS SET FORTH IN THIS GUARANTY AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.

(t)   **WAIVER OF JURY TRIAL**. GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY OR THE   LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY, INTENTIONALLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. GUARANTOR ACKNOWLEDGES THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR

HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR.   GUARANTOR ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT LENDER HAS ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THE LOAN DOCUMENTS AND THAT LENDER WILL CONTINUE TO RELY ON THIS WAIVER IN ITS RELATED FUTURE DEALINGS. GUARANTOR FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

8.     **Relationship of the Parties; No Fiduciary Relationship**. Notwithstanding any prior business or personal relationship between Guarantor and Lender, or any officers, director or employee of Lender, that may exist or have existed, the relationship between Lender and Guarantor is solely that of lender and guarantor. Guarantor and Lender are not partners or joint venturers, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between Guarantor and Lender to be other than that of guarantor and lender. Lender has no fiduciary or other special relationship with or duty to Guarantor and none is created hereby or may be inferred from any course of dealing or conduct or act or omission of Lender.

9.     **Certain Provisions of the Loan Agreement**. Without limiting Guarantor's Liabilities, Guarantor acknowledges and agrees to be personally bound by and liable for the performance of the provisions of Sections 9.7, 9.8 and 9.18 of the Loan Agreement.

10.     **Specific Remedial Payments**.

(a)     **Preference or Similar Payments**. If any payment by Borrower or any other Person to Lender is held to constitute a preference, fraudulent transfer or other voidable payment under the Bankruptcy Code or other insolvent or debtor relief law, or if for any other reason Lender is required to refund such payment or pay the amount thereof to any other Person, then such payment by Borrower or any other Person to Lender shall not constitute a release of Guarantor from any liability hereunder, and this Guaranty shall continue to be effective or shall be revived and reinstated (notwithstanding any prior release, surrender or discharge by Lender of this Guaranty or of Guarantor), as the case may be, with respect to, and this Guaranty shall apply to, any and all amounts so refunded by Lender or paid by Lender to another Person (which amounts shall constitute part of the Guarantor's Liabilities), and any interest paid by Lender and any outside attorneys' fees, costs and expenses paid or incurred by Lender in connection with any such event. It is the intent of Guarantor and Lender that the obligations and liabilities of Guarantor hereunder are absolute, unconditional and irrevocable under any and all circumstances and that until the Guarantor's Liabilities are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of Guarantor hereunder shall not be discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a guarantor. Lender shall be entitled to continue to hold this Guaranty in its possession for the longer of (i)

the period after which any performance of obligations under any Loan Document including, under the Loan Agreement or the Environmental Indemnity Agreement shall accrue, or (ii) a period of three hundred sixty-seven (367) days from the date the Guarantor's Liabilities are paid and performed in full and for so long thereafter as may be necessary to enforce any obligation of Guarantor hereunder or to exercise any right or remedy of Lender hereunder. Lender's surrender of this Guaranty shall not impair the revival, reinstatement and survival provisions set forth elsewhere in this Guaranty or in the Loan Documents.

(b)     **Stays and Delay**. If acceleration of the time for payment of any amount payable by Borrower under the Note or any other Loan Document is stayed or delayed by any law, filing or judicial decision, all such amounts shall nonetheless be payable by Guarantor on demand by Lender and shall bear interest as provided in the Loan Documents.

(c)     **Guarantor's Liabilities Not Reduced by Offset**. The Guarantor's Liabilities and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other Person, against Lender or against payment of the Guarantor's Liabilities, whether such offset, claim or defense arises in connection with any Guarantor's Obligations (or the creating the Guarantor's Liabilities) or otherwise. Without limiting the foregoing or Guarantor's liability hereunder, to the extent that Lender advances funds or extends credit to Borrower, and does not receive payments or benefits thereon in the amounts and at the times required or provided by applicable agreements or laws, Guarantor is absolutely liable to make such payments to (or confer such benefits on) Lender, on a timely basis.

11.     **Subordination of Certain Indebtedness**. If, for any reason whatsoever, Borrower or an Affiliate of Borrower is now or hereafter becomes indebted to Guarantor:

(i)     Such indebtedness and all interest thereon and all liens, security interests, judgment liens, charges and other encumbrances and rights now or hereafter existing with respect to property of Borrower securing such indebtedness shall at all times be and remain inferior and subordinate in all respects to the Guarantor's Liabilities and to any and all liens, security interest, judgment liens, charges and other encumbrances and rights now or hereafter existing upon Borrower's assets securing payment or performance of the Guarantor's Liabilities, regardless of whether such liens, security interests, judgment liens, charges or other encumbrances or rights in favor of Guarantor or Lender presently exist or are hereafter created or attached;

(ii)     Guarantor shall not be entitled to enforce or receive, and shall not demand or accept, payment, directly or indirectly, of any such indebtedness of Borrower to any Guarantor until the Guarantor's Liabilities have been fully and finally paid and performed and all commitments to lend under the Loan Documents have terminated;

(iii)     Guarantor shall not exercise or enforce any creditors' rights it may have against Borrower until the Guarantor's Liabilities have been fully and finally paid and performed and all commitments to lend under the Loan Documents have terminated;

(iv)    Guarantor shall not foreclose, repossess, sequester or otherwise takes steps or institute any action or proceedings, judicial or otherwise (including, without limitation, the commencement of, or joiner in, any action or proceeding pursuant to the Bankruptcy Code or other debtor relief law), to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances held by Guarantor on assets of Borrower until the Guarantor's Liabilities have been fully and finally paid and performed and all commitments to lend under the Loan Documents have terminated;

(v)    Guarantor hereby assigns and grants to Lender a security interest in all such indebtedness and security therefore, if any, of Borrower to Guarantor now existing or hereafter arising, including any dividends and payments pursuant to any proceeding under or pursuant to the Bankruptcy Code or other debtor relief law. In the event of any proceeding under or pursuant to the Bankruptcy Code or other debtor relief law involving either such Guarantor or Borrower as debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and shall have the right to receive directly from the receiver, trustee or other custodian (whether or not an Event of Default shall have occurred or be continuing under any of the Loan Documents), dividends and payments that are payable upon any obligation of Borrower to Guarantor now existing or hereafter arising, and to have all benefits of any security therefore, until the Guarantor's Liabilities have been fully and finally paid and performed. If, notwithstanding the foregoing provisions, Guarantor should receive any funds, payment, claim or distribution that is prohibited as provided above in this Section 11, Guarantor shall pay the same to Lender immediately, Guarantor hereby agreeing that it shall receive and hold the funds, payment, claim or distribution in trust for the benefit of Lender and shall have absolutely no right, either legal or equitable, to the same except to pay it immediately to Lender to be credited and applied to the Guarantor's Liabilities, whether matured or unmatured; and

(vi)    Guarantor shall promptly upon request of Lender from time to time execute such documents and perform such acts as Lender may require to evidence and perfect its interest and to permit of facilitate the exercise of its rights under this Section 11, including, without limitation, execution and delivery of financing statements, subordination agreements, proofs of claim, further assignments and security agreements, and delivery to Lender of any promissory notes or other instruments evidencing indebtedness of Borrower to Guarantor. All promissory notes, accounts receivable ledgers or other evidences, now or hereafter held by Guarantor, of obligations of Borrower to Guarantor shall contain a specific written notice thereon that the indebtedness evidenced thereby is subordinated under and is subject to the terms of this Guaranty.

12.    **Reserved.**

13.    **Reserved.**

14.    **Counterparts; Facsimile Signatures; Conflicts.** This Guaranty may be signed in multiple counterparts, each of which shall constitute an original and, taken together, shall constitute a single agreement, and by electronic transmission, which electronic signatures shall be considered original executed counterparts. Guarantor agrees that it will be bound by its own electronic signature. In the event of any conflict or inconsistency between the provisions of

this Guaranty and any of the other Loan Documents, the provisions selected by Lender shall govern and control.

GUARANTOR HEREBY ACKNOWLEDGES THAT IT HAS READ AND UNDERSTOOD ALL OF THE TERMS, CONDITIONS, AND PROVISIONS OF THIS GUARANTY, INCLUDING THE WAIVER OF JURY TRIAL, AND HAS BEEN ADVISED BY COUNSEL AS NECESSARY OR APPROPRIATE.

**[The remainder of this page is intentionally blank; signature page follows.]**

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the day and year first above written.

_____
Franklin C. Gatlin, III

STATE OF FLORIDA     )
                      ) ss.
COUNTY OF BROWARD  )

The foregoing instrument was acknowledged before me this ___6th___ day of March, 2015, by Franklin C. Gatlin, III (who is known to me personally or who produced a driver's license as identification), an individual resident of Florida.

_____
Notary Public

Notary Public State of Florida
Amy L. Buquo
My Commission EE077585
Expires 03/24/2015

21

6933391v5